IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 06-199 (GK) |
| : | |
| DARNELL STEWART : | |
| : | |
| Defendant. : | |
| : | |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Memorandum in Aid of Sentencing, recommending that the defendant be sentenced to a total period of incarceration of 60 months, followed by five years of supervised release. In support thereof, the United States respectfully states the following:

### Background

1. On June 13, 2006, the Metropolitan Police Department ("MPD") established an observation post ("OP") in the 1600 block of V Street, S.E., Washington, D.C., at approximately 7:30 p.m., after receiving citizen complaints of drug activity occurring in the area. Officers William Turner, Al Myers and Marion Anderson were manning the OP that evening. Using binoculars, Officer Turner observed the defendant, Darnell Stewart, engage in two separate transactions in the block, the first at about 8:10 p.m., and the second at about 8:20 p.m.

2. During first transaction, the defendant was approached by an unknown individual in the block who handed the defendant an unknown amount of cash. The defendant walked across the street to his car, a blue Dodge Magnum, bearing District of Columbia license plate number CM 3436. The defendant entered his car, leaned toward the center console, and then walked back to the

individual and handed the individual a small, unknown object. The defendant repeated the same pattern during the second transaction, occurring approximately 10 minutes later, receiving cash from an individual to whom the defendant handed a small unknown object moments later after returning from his car.

3. The defendant stayed in the 1600 block until after 9 p.m., at which point, the defendant returned to his car and drove away in the direction of 16th Street and Good Hope Road, S.E., Washington, D.C. Officer Turner broadcast a lookout for the defendant and his Dodge Magnum. Shortly thereafter, other MPD officers pulled the defendant's car over in the 1800 block of 16th Street, N.W., just a couple of blocks away from the OP. The defendant was the only occupant of the car.

4. The officers placed the defendant in handcuffs and conducted a search of the car, which revealed crack cocaine (according to tests performed by the Drug Enforcement Administration) and a Glock semiautomatic pistol, loaded with ten rounds of .40 caliber ammunition, in the vehicle's center console. The crack cocaine was contained in two plastic bags. One bag contained 12 small, blue ziplock bags, each filled with small rocks of crack cocaine. The other plastic bag contained 8 twisted plastic wrappings each containing larger rocks of crack cocaine. In all, 25.8 grams of crack cocaine were recovered. Government experts would have established at trial that the potential resale value of these drugs was $2,640.

5. The defendant was arrested. Prior to being transported to 7D, Officer Turner performed a show up identification procedure in the 1800 block of 16th Street and confirmed that the defendant was the person he saw engage in the two hand-to-hand transactions in the 1600 block of

V Street, S.E., earlier that evening. He also confirmed that the Dodge Magnum was the same vehicle he saw the defendant enter and drive out of the 1600 block of V Street.

7. On July 6, 2006, the defendant was indicted by a federal grand jury in a three count indictment charging him with (1) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1); (2) Unlawful Possession with Intent to Distribute Five Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); and (3) Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1).

8. The defendant was tried by a jury, beginning on March 5, 2007. That trial resulted in a hung jury, and the Court granted a mistrial on March 12, 2007.

9. Subsequently, on May 16, 2007, the defendant entered a plea of guilty to an information filed by the government charging one court of Unlawful Possession with the Intent to Distribute a Controlled Substance While Armed ("PWID While Armed"), in violation of 48 D.C. Code § 904.01(a)(1) and 22 D.C. Code § 4502 and one count of Carrying a Pistol Without a License ("CPWL"), in violation of 22 D.C. Code § 4504(a). Under the specific terms of the plea agreement, the parties agreed that the statutory mandatory minimum penalty for PWID While Armed would not apply at sentencing.[1] Additionally, pursuant to the terms of the plea agreement, the defendant agreed

---

[1] At the time the plea was entered, the Government stated that it would not allege that the firearm was operable in the PWID While Armed count. The CPWL count nonetheless requires that the firearm be operable, a fact the government was prepared to establish at trial. See Lee v. United States, 402 A.2d 840, 840 (D.C.C.A. 1979). In any event, because the defendant was not in actual, physical possession of the firearm, the mandatory minimum sentencing provision of 22 D.C. Code § 4502 would not apply. See Johnson v. United States, 686 A.2d 200, 205-06 (D.C.C.A. 1996) (holding that the five-year mandatory minimum penalty did not apply where the gun was merely "readily accessible" to the defendant in a PWID While Armed case).

3

not to contest the administrative forfeiture of the Dodge Magnum, its license plate, the .40 caliber Glock handgun and related ammunition, and the $795 seized pursuant to his arrest.

## Statutory Penalties

10.    Pursuant to 48 D.C. Code Section 904.01(a)(1) and 22 D.C. Code Section 4502, the PWID While Armed charge carries a maximum statutory penalty of 30 years of imprisonment and a fine of no greater than $500,000. Pursuant to 22 D.C. Code Section 4504(a), CPWL carries a maximum penalty of not more than 5 years of imprisonment and a fine of not more than $5,000. In addition, the defendant must pay a special assessment of $100 and $5,000 for each felony conviction, pursuant to 4 D.C. Code Section 516.

## Sentencing Guidelines

11.    The Federal Sentencing Guidelines do not apply to this case. However, the District of Columbia adopted voluntary sentencing guidelines in June 2004. The D.C. Sentencing Guidelines recommend a range of imprisonment based on the defendant's criminal history score and offense(s) of conviction. In this case, the defendant's prior criminal history score of 3.25 places him in criminal history category C. For the PWID While Armed charge, the D.C. Sentencing Guidelines thus recommend that he be sentenced to between 41 and 84 months of imprisonment. D.C. Sentencing Guidelines Practice Manual App. B (2006). For the CPWL charge, the D.C. Sentencing Guidelines recommend a sentence of between 14 and 32 months. Id. at App. A. For the CPWL, the guidelines further proscribe that the sentence may be fulfilled by either imprisonment or a split sentence (with some period of incarceration imposed). Id. The sentencing guidelines provide additional guidance for judges in imposing consecutive and concurrent sentences. In this case, because these multiple

offenses arise from a single, "non-violent" event, the guidelines recommend that the sentences be imposed concurrently.  Id. at §§ 6.2 & 7.4.

## Sentencing Recommendation

12.     The government recommends that the Court sentence the defendant to 60 months of incarceration, followed by five years of supervised release, for the PWID While Armed charge, and 32 months of incarceration, followed by three years of supervised release, for the CPWL charge.  The government further recommends that these sentences be imposed concurrently.

13.     The government's recommendation, which falls squarely within the applicable D.C. Sentencing Guidelines, is reasonable.  Like the Federal Sentencing Guidelines, the D.C. Sentencing Guidelines were designed to mete out fair and uniform sentences.  See D.C. Sentencing Guidelines Practice Manual § 1.1 (2006) ("Both truth in sentencing and general fairness require that similarly situated offenders should receive similar sentences for committing the same crime in essentially the same way.")  A sentence of 60 months of incarceration satisfies this goal.[2]

14.     A sentence within the Sentencing Guidelines range is also appropriate for this defendant based on the facts of this case, when viewed in conjunction with the defendant's criminal history and his conduct during the commission of the crime here.   Indeed, the recommended sentence of 60 months of imprisonment is supported by the factors to be considered by sentencing courts as articulated in 18 U.S.C. Section 3553(a).  That provision provides, in pertinent part, that

---

[2]     It is worth noting that the defendant has received a significant benefit from the plea agreement he entered into with the government.  By permitting him to enter a plea of guilty to offenses under the D.C. Code, and to be sentenced according to the D.C. Sentencing Guidelines, the defendant faces significantly less time than he would under the Federal Sentencing Guidelines, which would counsel a 70-87 month sentence for the federal equivalent of the CPWL (see, e.g. U.S.S.G. § 2K2.1(a)(3)) and a 100-125 month sentence for the PWID While Armed conviction (see, e.g., U.S.S.G. §§ 2D2.1 (a)(3) & (c)(6)).

5

when fashioning a sentence, courts should consider (1) the circumstances surrounding the instant offense and the defendant's criminal history, (2) the seriousness of the offense and the need to promote respect for the law and punishment, (3) potential deterrence, (4) protecting the public, and (5) the rehabilitative needs of the defendant.  Id.

15.    The defendant's conduct in this case warrants a sentence that reflects the seriousness of the offense and the threat the defendant poses to the community.  Indeed, the defendant possessed over 28 grams of crack cocaine.  Law enforcement officers observed the defendant in the act of distributing crack cocaine on two separate occasions.  And the defendant was prepared to take steps to protect his stash – he kept a loaded Glock semiautomatic pistol in the same compartment as his drugs within his car.  It is without question that crack distribution has had devastating affects on this community, based on the violent behavior it causes in individuals who use it, and the inherent violence that comes from the drug trafficking business.

16.    A sentence of 60 months of incarceration also furthers the goals of deterrence and protecting the community from these types of crimes.  The defendant is clearly a danger to the community.  Indeed, the business of distribution of drugs is an inherently dangerous activity, subjecting the community to the proliferation of and use of dangerous weapons.  See e.g., United States v. Jenkins, 928 F.2d 1175, 1180 (1991) (D.C. Cir. 1991) (permitting government's expert to testify that those who deal drugs typically keep firearms for protection, reasoning that "[w]eapons are, in short, tools of the trade," and admitting ammunition as 404(b) evidence).  Early release of the defendant would subject the community to further risk of narcotics distribution and potential violence and would signal to the community that these crimes do not carry serious penal consequences.  The government's recommended sentence accomplishes the goal of protecting the

community from the commission of further drug distribution by the defendant himself, as well as serving the goal of deterring other individuals in the community from committing these types of offenses.

17. Finally, none of the factors enumerated in 18 U.S.C. § 3553(a) suggest an appropriate reason or extraordinary circumstance for the Court to depart from the recommended range or to impose a non-guidelines sentence.

WHEREFORE, based upon the above, and the information reflected in the presentence report, the United States respectfully recommends a sentence of a period of 60 months of incarceration, followed by a five year period of supervised release.

Respectfully,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


By: _____/s/_____
JOCELYN S. BALLANTINE
ASSISTANT UNITED STATES ATTORNEY
C.A. Bar Number 208267
United States Attorney's Office
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
Phone: (202) 514-7533

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the United States' Memorandum in Aid of Sentencing was served upon counsel of record for the defendant, Brian K. McDaniel, 1211 Connecticut Avenue, NW, Suite 506, Washington, DC by email at Brianmac1911@aol.com, this 8th day of August, 2007.

_____/s/_____
JOCELYN S. BALLANTINE